IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Crim. No. 20-95 |
| | ) Civ. No. 22-1555 |
| | ) |
| v. | ) |
| | ) Judge Robert J. Colville |
| REBECCA OWENS | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are three Motions filed by Defendant, Rebecca Owens, specifically: (1) a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate") (ECF No. 103 and 22-cv-1555 ECF No. 1);[1] a Motion seeking relief from the requirement that Defendant make restitution payments while incarcerated ("Restitution Motion") (ECF No. 131); and (3) a Motion seeking permission to utilize email and for permission to participate in video visits ("Email and Video Visit Motion") (ECF No. 132). The Court set briefing deadlines for the Motions at issue, and the deadlines for the filing of any further briefing have passed. Accordingly, the Court considers each of the Motions to be fully briefed and ripe for disposition.

---

[1] For ease of reference, the Court cites only to the documents filed in Defendant's criminal case, but notes that a parallel civil docket has been opened at 2:22-cv-1555.

1

I. **Background**

On October 13, 2020, Defendant pled Guilty to Count 1 of the Indictment, which charged her with Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor, from on or about May 17, 2019, to on or about May 18, 2019, in violation of 18 U.S.C. §§ 2251(a) and (e). In addition to Defendant's entrance of a guilty plea at Count 1, she also acknowledged responsibility for the conduct charged in Count 2 of the Indictment, which charged her with Distribution of Material Depicting the Sexual Exploitation of a Minor, from on or about May 17, 2019, to on or about May 18, 2019, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).

Following the change of plea hearing, the Court granted several Defense motions seeking to continue the sentencing hearing and to extend deadlines, each of which cited the need for additional time to prepare for sentencing. The Defendant, through counsel, filed a Sentencing Memorandum on March 21, 2022, requesting that the Court impose the statutory minimum sentence of 180 months' imprisonment, citing Defendant's acceptance of responsibility and candor to law enforcement, her health, substance abuse, educational, and employment history, the traumas Defendant suffered when she was young, her lack of a prior criminal history, her ineligibility for sentence reduction programs and post-conviction motions, and her purported rehabilitation as bases for a variance. At a status conference on March 22, 2022, Defense counsel made a final motion to continue the sentencing hearing to allow for a psychologist evaluation of the Defendant and the preparation of a mitigation report. The Court granted that request, and Defendant's reports were subsequently filed on June 1, 2022. On June 22, 2022, the Court sentenced Defendant to 270 months imprisonment at Count 1 of the Indictment and twenty years' supervised release. The 270 months of imprisonment imposed represented a substantial 7.5 years' variance from the Guideline

range of 360 months.  The Court imposed restitution in the amount of $3,000 for the minor victim, no fine, and a $100 special assessment.

In imposing sentence, the Court explained that it considered all of the relevant sentencing factors, and ultimately found that a variance was warranted in this case.  In particular, the Court noted that Defendant's traumatic childhood and related mental health and substance abuse issues, lack of a criminal history, and age counseled that a Guideline sentence was greater than was necessary to comply with the goals of sentencing.  That said, the Court further explained that, given the truly troubling and disturbing conduct at issue, it could not find a minimum sentence appropriate.  The Court held that a sentence of 270 months of incarceration, followed by twenty years of supervised release, was sufficient, but not greater than necessary, to comply with the goals of sentencing.  As such, the Court granted Defendant's request for a variance, but not to the degree requested by Defendant.

Defendant filed her Motion to Vacate on November 3, 2022.  On November 8, 2022, the Court filed a *Miller* Notice and Order (ECF No. 104) indicating that the Court had received the Motion to Vacate, which the Court construed to seek relief under 28 U.S.C. § 2255.  The Notice and Order notified Defendant that federal law required her to include all federal constitutional claims challenging a specific conviction in one habeas corpus petition, and informed her that she could proceed via one of three options: (1) withdraw her petition and file a new one; (2) file an amendment within 120 days; or (3) choose to have the petition ruled on as filed.  The Order required Defendant to notify the Court of her intention within 30 days.  She did not file a statement of intent.  Accordingly, the Court entered an Order (ECF No. 105) on December 14, 2022 stating that Defendant's Motion to Vacate would be ruled on as filed, and that Defendant thus lost her

ability to file a second or successive petition absent certification by the United States Court of Appeals for the Third Circuit. This Order also set a briefing schedule.

The Government filed its Response (ECF No. 109) on February 21, 2023. Defendant subsequently moved for an extension of time to file a reply, and further requested that she be permitted to review the pretrial discovery in this case and the Government's sentencing exhibits.[2] By way of an Order (ECF No. 113) dated April 6, 2023, the Court denied Defendant's request for review of all pretrial discovery materials, finding that Defendant had not provided good, or any, cause for her request that all of the pretrial discovery in the underlying criminal matter be provided to her. In an abundance of caution, the Court ordered that Defendant would be provided access to the sentencing exhibits, as the Motion to Vacate takes issue with the manner in which Defendant's counsel participated in the sentencing hearing in this matter. Given the nature of the crime of conviction and the very sensitive nature of the sentencing exhibits themselves, the Court appointed counsel to Defendant for the limited purpose of facilitating Defendant's review of the sentencing exhibits.

Defendant subsequently withdrew her request to review the exhibits, *see* 22-cv-1555 ECF No. 13, but reaffirmed her desire to review the exhibits on June 13, 2023, and further requested the appointment of counsel to assist her with her pursuit of relief under 28 U.S.C. § 2255, *see* ECF No. 118. The Court denied Defendant's request for the appointment of counsel without prejudice, but again provided for a procedure by which Defendant could review the sentencing exhibits at issue. *See* ECF No. 119. Defendant filed supplements (ECF No. 120) to her Motion to Vacate on

---

[2] These sentencing exhibits included a text message sent by Defendant disavowing her involvement in the crime to which she pled guilty, despite having previously participated in an interview with law enforcement where she admitted the criminal conduct, as well as evidence of conversations that Defendant had with an adult individual other than the individual involved in the offense conduct, indicating Defendant's willingness to offer children under her care and control to this other individual for sexual abuse.

June 28, 2023, which can fairly be described as preludes to her Restitution Motion and her Email and Video Visit Motion.

On July 30, 2023, Defendant's temporary counsel filed a status report (ECF No. 122) indicating that Defendant had reviewed the sentencing exhibits consistent with the Court's Order, and that the exhibits had been returned to the Government. Counsel subsequently withdrew from the case. On August 3, 2023, Defendant moved for the undersigned's recusal, *see* ECF No. 126, citing only that she wanted a new judge to review her case. She also renewed her request for the appointment of counsel. That same day, the Court entered an Order providing:

> Upon review of the Motion for Recusal and Appointment of Counsel filed by Rebecca Owens [ECF No. 126], it is hereby ORDERED that the Motion is denied. Ms. Owens cites no basis for recusal, and the Court has already explained that there is no absolute constitutional right to counsel in federal habeas corpus proceedings[,] and set forth the reasons that the Court has declined to appoint counsel in this case.

ECF No. 127. The Court now definitively holds that there is no basis for the appointment of counsel, consistent with the Court's discussion in its Orders at ECF Nos. 119 and 127, and any such request is denied.

On August 25, 2023, Defendant filed her Reply (ECF No. 128). On September 13, 2023, the Government filed its Surreply (ECF No. 129). Defendant subsequently filed her Restitution Motion and her Email and Video Visit Motion on January 22, 2024. The Government filed a Response (ECF No. 134) to those Motions on February 4, 2024.

II.     **Discussion**

   A. **Motion to Vacate**

By way of the Motion to Vacate, Defendant asserts that she believes that she received ineffective assistance of counsel, first citing to counsel's failure to answer phone calls when Defendant had questions or concerns about her upcoming sentencing hearing "or other things" on

her case. ECF No. 103 at 4. She cites to feeling anxious, nervous, or scared, *id.*, presumably in anticipation of sentencing, where she was subject to a guideline range of incarceration of 360 months. She further argues that counsel was ineffective for not obtaining Defendant's transfer from county prison, where she asserts that she "had a target on [her] back" with certain staff, pending sentencing. *Id.* at 5. Defendant next asserts that counsel did not "fight for [Defendant]" at sentencing, that counsel did not seem to care, and that he failed to cite to Defendant's lack of a criminal history in advocating for what Defendant believed was an appropriate sentence. *Id.* at 6-8. While outwardly acknowledging how serious her crime was, Defendant believes that the sentence imposed "was a little harsh," primarily because she had no criminal history and because she has "learned [her] lesson" after three years in custody. ECF No. 103-1 at 1. In her Reply, Defendant asserts that the Court failed to take her substance abuse history into consideration. ECF No. 128 at 3. She further asserts that her family and friends would have testified at her sentencing hearing, but that counsel advised against such testimony. *Id.* at 6. Defendant acknowledges that counsel did a "good thing" by obtaining mitigation reports from Natalie A. Drozda, PhD, LPC, a licensed professional counselor, and Vickie Piontkowski JD, MSW, LCSW, a Mitigation Specialist. ECF No. 103 at 1-2.[3]

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255 if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). As a collateral challenge, a motion under § 2255 is "reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Section 2255 relief "is available only when 'the claimed error of law was a

---

[3] Though Defendant notes that she believes that these individuals' input did not "help." ECF No. 103-1 at 2. Again, the Court notes that it considered all relevant factors in imposing sentence, including the reports submitted on Defendant's behalf, and further notes that Defendant received a sentence that was 7.5 years below the applicable guideline range.

fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). The Supreme Court has explained that "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

A district court must order an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). If a hearing is not held, the district judge must accept the defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

Under the Sixth Amendment to the United States Constitution, a defendant has the right to effective assistance of counsel. A defendant relying on an allegation of ineffective assistance of counsel to support their request for relief under 28 U.S.C. § 2255 bears the burden of establishing that counsel's performance was deficient. *Burt v. Titlow*, 571 U.S. 12, 23 (2013). "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide

range of reasonable professional assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  To prove ineffective assistance of counsel, a movant must establish:

> [first,] that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Travillion*, 759 F.3d 289 (quoting *Strickland*, 466 U.S. at 687).  If it is easier to dispose of an ineffective assistance claim on the ground that the petitioner has not shown sufficient prejudice, a court may begin with that prong of the *Strickland* test.  *Id*.

The Third Circuit has explained:

> As the Supreme Court has stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."  *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  On review, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir.1996) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  "In essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'"  *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052).  Regarding the interplay between *Strickland* and § 2255, if [a defendant] shows both elements of *Strickland*, he satisfies the requirements of § 2255.  *See United States v. Rad–O–Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir.1979) ("[P]ersons . . . can attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

*Travillion*, 759 F.3d at 290.  With respect to prejudice, "[t]he defendant must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. Purcell*, 667 F. Supp. 2d 498, 504 (E.D. Pa. 2009), *as amended* (Oct. 30, 2009), *aff'd*, 517 F. App'x 79 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 684).  With respect to this standard, the *Purcell* court explained:

> Moreover, "*Strickland v. Washington* does not require certainty or even a preponderance of the evidence that the outcome would have been different with

8

effective assistance of counsel; it requires only 'reasonable probability' that that is the case." *United States v. Day,* 969 F.2d 39, 45 n.8 (3d Cir. 1992) (quoting *Strickland,* 466 U.S. at 693–94, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Day,* 969 F.2d at 42 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). In this context, to satisfy the prejudice inquiry, the defendant "must demonstrate that, but for his . . . attorney's alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

*Id.* at 511.

Turning to the instant case, the Court finds no need for an evidentiary hearing on the Motion to Vacate because the record conclusively establishes that Defendant is not entitled to relief. The Motion to Vacate asserts that Defendant's lawyer did not answer her phone calls regarding questions or concerns about her case and the sentencing hearing, that counsel did not get Defendant transferred from county prison prior to sentencing, that counsel did not "fight for [Defendant]" at sentencing, and that counsel failed to reinforce that Defendant did not have an adult criminal history in arguing for an appropriate sentence. None of these assertions could possibly support an argument that, absent counsel's alleged unprofessional errors, the result of sentencing would have been different, and Defendant thus has not set forth assertions that approach providing the Court with a reasonable probability sufficient to undermine confidence in the outcome of Defendant's sentencing hearing. That is, Defendant cannot establish prejudice on the facts alleged in her Motion to Vacate and briefing.

Initially, as the Government notes and as Defendant acknowledges, Defendant stated under oath during both her change of plea and sentencing hearings that she had reviewed all relevant documents, that she had no questions or concerns, and that she was "absolutely" satisfied with counsel's representation.[4] The Supreme Court has explained that "[s]olemn declarations in open

---

[4] Defendant now asserts that she made these representations under oath because she was unaware that she could request replacement counsel and because she was intimidated by the presence of the victim's father, against whom she has a protection from abuse order, in the courtroom. Defendant's unequivocal and lucid responses in open court greatly

9

court carry a strong presumption of verity[,]" and that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This presumption attaches to statements made at change of plea and sentencing hearings, as well as statements concerning a defendant's satisfaction with counsel's representation, and a defendant cannot rely on unsupported allegations to challenge the presumption. *United States v. Aine*, 386 F. App'x 16, 21 (2d Cir. 2010).

Defendant's assertions that she believed that she would receive a sentence of fifteen years cannot be squared with her unequivocal affirmative responses to the following questions during the change of plea hearing:

> Do you understand that the Court will not be able to determine the advisory guideline range for your case until after the presentence report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, *and that the actual guideline range in your case may be different from any estimate that your attorney may have given to you*?
>
> . . . .
>
> Ms. Owens, do you understand *I am not bound by any recommendation of sentence your attorney or the government may have suggested to you, and I can sentence you up to the maximum sentence permitted by statute*?

ECF no. 116 at 32:24-33:7; 33:25-34:5 (emphasis added). Her assertions about what sentence she expected to receive are even further contradicted by her unequivocal responses in the negative to the following questions:

> Has anyone made any threat to you or to anyone else that has forced you in any way to plead guilty today?

---

undermine these new conclusory and self-serving statements. In any event, even if the Court were to credit these assertions, Defendant's Motion to Vacate is meritless for the reasons discussed below, and would not be sufficient to warrant relief.

> . . . .
>
> Has anyone made any prediction or promise to you as to what your actual sentence will be?

*Id.* at 34:10-13; 34:14-17. While Defendant answered the following question in the affirmative: "Has anything I said here today suggested to you what your actual sentence will be?"; the entirety of the record makes clear that the Court did not, during the change of plea hearing, in any way suggest that a specific sentence would apply in this case. Defendant's Reply further makes clear that she, in fact, understood that she could have ultimately been sentenced to thirty years of incarceration, *see* ECF No. 128 at 2, and that she is merely dissatisfied with the sentence that the Court ultimately imposed, which she describes as "a bit much" and "a bit extreme," *id.* at 2-3. Defendant's briefing in no way supports even an inference that someone made a promise to Defendant that she would receive a sentence of fifteen years, and the same is, in any event, entirely belied by the record.

As to Defendant's assertions respecting counsel's failure to answer phone calls, the Court agrees with the Government that this allegation is conclusory and could not support a finding of prejudice. Again, Defendant testified during the sentencing hearing that she was "absolutely" satisfied with counsel's representation, ECF No. 108 at 6:13-16, and the Court asked Defendant whether she would like an opportunity to speak privately with counsel prior to proceeding to sentencing, an offer Defendant declined, *id.* at 7:1-4. Defendant fails to provide any argument supporting an inference that the result of the sentencing hearing would have changed had she spoken more with her attorney over the phone, and she actively declined an opportunity to speak with counsel privately ahead of the sentencing hearing. Again, counsel in this case hired two experts to prepare mitigation reports, and he requested a number of extensions to fully prepare for

sentencing. Defendant has provided the Court with only a conclusory and self-serving assertion that the outcome of her sentencing hearing would have been different but for counsel's occasional unavailability for phone calls. The Court finds that Defendant has not established prejudice with respect to this allegation.

The failure to establish prejudice is even more pronounced with respect to counsel's purported failure to obtain Defendant's transfer from her location of pretrial confinement. While Defendant may not have been satisfied with her location of confinement, the same in no way supports a finding that she might have obtained a different sentence had she been transferred. This allegation might be a point of contention between lawyer and client, but it certainly does not set forth an exceptional circumstance warranting Section 2255 relief.

With respect to Defendant's assertion that counsel failed to raise Defendant's lack of criminal history in advocating for an appropriate sentence, the Court notes that this assertion is, quite simply, inaccurate. Counsel raised Defendant's lack of criminal history in Defendant's sentencing memorandum, and, more importantly with respect to the issue of prejudice, the Court fully considered Defendant's criminal history in imposing sentence. *See* ECF No. 108 at 62:8-10 ("The Court notes that defendant has no prior criminal record or history of sex offending behavior, *and the same supports her request for a variance*." (emphasis added)); *see also id.* at 58:21-59 ("The seriousness of the present offense is further reflected by the guidelines. *Even though the defendant has no prior criminal history, which I acknowledge and recognize*, her guideline term of imprisonment based upon an offense level of 43 would be life imprisonment. Because 30 years is the maximum statutory sentencing guideline range, is transferred or modified to 30 years." (emphasis added)). Counsel's decision to focus on other mitigation issues during the sentencing hearing was one of strategy, and the Court does not find that decision to be unreasonable under

prevailing professional norms. Again, the Court fully considered Defendant's lack of criminal history in imposing sentence, and counsel's efforts resulted in a 7.5-year variance.

The decision as to whether to call witnesses on Defendant's behalf during the sentencing hearing was also strategic, and Defendant fails to articulate what that testimony would have entailed and, perhaps more importantly, again fails to reasonably assert that such testimony would have resulted in a different sentencing outcome. Again, the Court was made well aware of Defendant's background, through numerous sources. While testimony may have shed further light on the same, the Court is unconvinced that the failure to call such witnesses was ineffective assistance or that it prejudiced Defendant in any way.

Defendant's assertions respecting counsel's level of advocacy during the sentencing hearing itself fare no better. Initially, Defendant's perception of counsel's advocacy during the hearing itself does not tell the whole story, as a fair degree of counsel's efforts, including obtaining the mitigation reports, reviewing the Presentence Investigation Report, and drafting a sentencing memorandum, took place in advance of sentencing. As the Government notes, counsel sought and obtained Defendant's consent for each continuance, as counsel purposefully and effectively prepared for the sentencing hearing. Defendant's own acknowledgment of the quality of the mitigation reports prepared at counsel's direction belies her assertion that she is disappointed in counsel; rather, it seems to this Court that she is disappointed in the sentence imposed by the Court. The Court's sentence is entirely supported by the record, and Defendant's conclusory assertions that she felt as though her counsel did not fight enough for her at sentencing gives the Court no pause whatsoever in concluding that Defendant has not established that, but for counsel's purported unprofessional level of advocacy, the Court would have imposed a different sentence.

The Court's recollection is that counsel advocated zealously and effectively, resulting in a substantial variance.

As the Court noted during sentencing, Defendant pled guilty under oath to production of child pornography, and she further accepted responsibility for distribution of child pornography. While Defendant outwardly acknowledges the seriousness of her crimes, her arguments in support of her Motion to Vacate belie a true appreciation of the truly reprehensible nature of her crimes.[5] It is unquestionable that Defendant pled guilty to and accepted responsibility for crimes that were extraordinarily serious in nature. The offense conduct in this case was nothing short of exceptionally disturbing and troubling, as Defendant took nude and sexually explicit photos of her 3-year-old daughter, including sexual contact, and sent these photos to an adult individual who had contacted Defendant online looking for nude photos of young girls. Defendant also repeatedly suggested that she would allow this adult individual, as well as another individual, to sexually abuse her three-year old daughter. The nature, tenor, and progression of this text conversation between the Defendant and the adult individual identified as M.K. is, quite frankly, highly disturbing and completely reprehensible. As a parent, Defendant was supposed to be the protector of her child. Instead, she offered her child to a sexual predator, at an age where her daughter could not speak for or protect herself. The Court found that the potential damage to the victim is immeasurable.

It bears noting that, in sentencing Defendant, the Court considered the reports submitted by Defendant and authored by Natalie A. Drozda, PhD, LPC, a licensed professional counselor,

---

[5] This is, unfortunately, consistent with the representations in Defendant's Reply, wherein she states that she could not have known that she was speaking with "some sick weirdo" in her message thread wherein she shared nude photos of her child and offered the child up for sexual abuse. ECF No. 128. On one page, she acknowledges sending photographs that she should not have sent, and on the next she denies wrongdoing on the basis of a wrong email address or phone number. Again, Defendant pled guilty under oath to the crimes at issue, and she still acknowledges her guilt while also seemingly trying to downplay the offense.

and Vickie Piontkowski JD, MSW, LCSW, a Mitigation Specialist.  These reports addressed the significant abuse and trauma suffered by Defendant, her mental health issues, substance use, and lack of effective treatment related to the same, and opined that these factors contributed to Defendant's criminal conduct.  The reports further opined that, through treatment and with time, Defendant's well-being will improve and the likelihood that she would reoffend will decrease.  Defense counsel sought additional time to obtain these reports, and, as noted, they certainly played a genuine role in the Court's determination that a variance was warranted.  Defendant herself acknowledges that counsel did a "good thing" by obtaining these reports, and that she feels that both experts "did wonderful."  ECF No. 103-1 at 3.

In short, Defendant asserts that her counsel was ineffective because Defendant did not receive the statutory mandatory minimum sentence of 180 months' incarceration.  The record, and the Court's recollection, severely contradict any assertion that counsel was ineffective.  The Court considered all of the relevant sentencing factors in imposing sentence, and ultimately varied downward by 7.5 years.  While Defendant may not be happy with the sentence the Court imposed, it is not the fault of her counsel, who advocated zealously on her behalf.  Rather, it is the truly abhorrent and disturbing offense conduct at issue, when weighed against all relevant factors, in this case that caused the Court to conclude that Defendant should not receive the statutory minimum sentence of 180 months of incarceration.  *See* ECF no. 108 at 45:8-17 ("I'll reiterate while I believe that a – I'll call it a substantial variance is warranted in this matter, I must note the offense at issue is exceptionally serious in nature, and I simply cannot find the defendant's suggestion that a mandatory minimum of 180 months is sufficient but not greater than to satisfy the purposes of sentencing, which, of course, include, as you know, just punishment, deterrence, protections of the public, and rehabilitation of the defendant.").  This Court notes that this sentence

15

was not an easy one to impose, and the Court gave sincere consideration to all available information from all sources in deciding to vary from the Guideline range, but not to the degree requested by the Defense. This includes Defendant's mitigation reports, her exceptionally difficult and tragic upbringing and personal history of abuse, her lack of criminal history, and her issues with substance abuse. *See* ECF No. 108 at 61:20-22 ("These life experiences quite obviously, quite plainly, weigh in favor of a variance in this matter."). That said, the Court's sentence is entirely supported by the record, and Defendant points to nothing that indicates that, absent her attorney's alleged ineffectiveness, she would have likely received a lower sentence.

In imposing a substantial sentence, the Court also considered the need to provide both general and specific deterrence. *See* ECF No. 108 at 62:17-23 ("I note that while I granted a variance, the sentence imposed is still substantial and well over the statutory minimum, and the substantial sentence imposed in this case will provide both general and specific deterrence with respect to production of child pornography and will protect the public and the victim from further harm caused by the defendant."). The Court ultimately provided:

> Having considered all the relevant factors, I do find, as I said before, a variance is warranted. Defendant's traumatic childhood, lack of criminal history, and age counsel [that] a guideline sentence […] is greater than is necessary to comply with the goals of sentencing. That said, given the truly troubling and disturbing conduct at issue, I cannot find that a minimum sentence is appropriate. A sentence of 270 months incarceration, followed by 20 years of supervised release, in my judgment, is sufficient but not greater than is necessary to comply with the goals of sentencing.
>
> As such, while I granted the request, I have not granted it to extent sought by defendant.

ECF No. 108 63:24-64:12. The Court stands by that determination, and finds that nothing in Defendant's submissions indicates that, but for counsel's alleged unprofessional errors, the result of the sentencing hearing would have been different.

The Court unequivocally finds that Defense counsel in this case was far from ineffective. To the contrary, Defense counsel's efforts resulted in 7.5-year variance from the Guideline range. For the reasons discussed above, the Court finds that the Motion to Vacate is meritless, and it will be denied as such. The Court finds that, because jurists of reason would not find it debatable whether Defendant's claims should be dismissed, Defendant is not entitled to the issuance of a certificate of appealability. The denial of a certificate of appealability does not prevent Defendant from appealing the order denying her petition so long as she seeks, and obtains, a certificate of appealability, from the Court of Appeals.

### B. The Restitution Motion and the Email and Video Visit Motion

The Court is also in receipt of two letters from Defendant, which have been docketed at ECF Nos. 131 and 132. The Court construes the first as a motion to modify the Court's restitution order, which requires Defendant to ultimately pay restitution in the amount of $3,000.00. Defendant asks that the Court relieve her of the obligation to make restitution payments while she is incarcerated. While, Section 3664(k) allows modification of a restitution order, *see United States v. Knight*, 315 F. App'x 435, 437 (3d Cir. 2009), Defendant's correspondence makes clear that she is challenging her "FRP" payments, which is a clear reference to the Inmate Financial Responsibility Plan ("IFRP"), 28 C.F.R. §§ 545.10, 545.11.

In summary, challenges to BOP programs must be brought under § 2241 after all administrative remedies have been exhausted. Prisoners cannot use § 3664(k) as a vehicle for a court not in the district of incarceration to modify or suspend IRFP payments. *United States v. Diggs*, 578 F.3d 318, 320 (5th Cir. 2009); *see also United States v. Knight*, 315 F. App'x 435, 437 (3d Cir. 2009) ("In its March 20, 2008, Memorandum and Order, the District Court determined Knight had failed to show a material change in circumstances, finding neither Knight's long prison

term nor his limited prison earnings are changed circumstances justifying a reduction. His participation in the Inmate Financial Responsibility Program and penalties imposed under the program also do not establish changed circumstances justifying the relief sought. These conclusions are within the District Court's sound discretion.").

The Government correctly notes that Defendant is currently incarcerated at FCI-Hazleton, which is located in Northern District of West Virginia. The Court agrees with the Government that Defendant's Restitution Motion constitutes a Section 2241 habeas petition, and that it must be brought in the district of her confinement. Accordingly, the Restitution Motion is dismissed without prejudice to Defendant seeking relief in her district of confinement.

The Court likewise has no jurisdiction over the Email and Video Visit Motion because Defendant is not incarcerated at a BOP facility within the Western District of Pennsylvania. Moreover, such relief is not properly sought by way of a habeas petition. The Email and Video Visit Motion is denied without prejudice to Defendant seeking relief in the appropriate forum and in the appropriate manner.

Finally, the Court notes Defendant's assertions at ECF No. 120 respecting her experiences with back pain and numbness, and her requests for a bottom bunk pass. The Court is not unsympathetic to Defendant's representations, and the Court is hopeful, and hereby recommends, that the Bureau of Prisons look into this issue and provide Defendant with any reasonably available and appropriate accommodations.

### III.    Conclusion

For the reasons discussed above, the Court will deny each of Defendant's pending Motions. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: June 5, 2024

cc: All counsel of record

    Rebecca Owens -- 01522-509
    FCI-Hazelton
    Federal Correctional Institution
    Satellite Camp
    Secure Female Facility
    P.O. Box 3000
    Bruceton Mills, WV 26525